Judges Waties and James
differing in opinion from their brethren, delivered the following opinions :
I think the decree of the Circuit Court ought to b® 'affirmed, but on different grounds from those on which the decree is founded.
This court cannot, it appears to me, make the trust estate of Mrs. Mayrant liable for the debts of her husband, without setting aside the decretal order of the Court of Equity in 1808. But that court was then su--premc, and its decrees are not. now under the control of this court* or.subject even to' a review. If, however, it is held that-the decretal order of 1795 is now operative, so as to give a life estate to Mr. Mayrant in the property directed to be settled, then the order of 1808 will not have the effect which I think it was intended to have.- — - There were then two orders on the subject oh record, which were inconsistent with each other; one entered on the 26th March 1794, declaring that the property should be considered as settled on the wife aionc; the other on the 28th March 1795, ordering the settlement to-be made on the husband and wife and their issue. The court being cal- *605 let! upon in 1808 to give the true construction to thesd contradictory orders, made the following order: “Upon readingthe petition'in tlie case, &c. and the decretal orders made therein, it is ordered that the said John Mayrant do ■ forthwith execute a settlement to be dated as of the 26th March 1794, pursuant to the intent of the court in the said decretal order, that is to say, to the separate use and benefit of the said Isabella Mayrant, during her life, and from and after her death to the joint use and be-’ hefit of the children of the said Isabella and John, equally to be divided among them.” I think it evident from this order that it was intended to supercede the order of 1795. which gave a life estate to Mr. Mayrant, to annul that ■ ■order as an erroneous entry in this respect, and to carry into execution the one of 1794, which gave a separate estateto Mrs. Mayrant. ' This intention appears to me so obvious, that I have no doubt that if the present demand had been then before .the Court, the trust estate would not' have been made liable to it ; for if the order of 1795, was considered a nullity as to the settlement, it could' vest no interest in Mr. Mayrant, nor could any rights accrue under, it to his creditors; ami the court by directing the settlement .to bear date on the 26th of March 1794, has ‘ expressly given to it a retrospective operation from that date. This view is-much strengthened by the fact, that-in the original suit for the recovery of the property of which the trust estate consists, the executor prayed that the same might be settled to the separate use of Mrs.' Mayrant. The first order made, (that of 1794,) was in conformity thereto; and the order of 1808 was a confirmation of that order, for this is distinctly expressed. And it was the duty of the court to do this; for although some creditor of the husband might have trusted to the entry of 1795, (winch however is not pretended in this case,)-yet the court was bound to protect the interest of the wife against an erroneous entry, and to give her the' benefit of its original order in her favor. But whether it was proper to do this or not, is a question not open to the examination of this Court. It was the act of a court of supreme and final jurisdiction ; and as such ought to he conclusive.
*606 As it does not appear to me that Mr. Mayrant eon* tracted with the complainant as the agent of the trustee., or that the articles went to the use of the trust estate, I am therefore of opinion that the trust estate ought not to be made liable to the complainant’s demand.
Thomas WaTieb.
Certain facts have been developed since the hearing below, which in my mind add considerable weight to the opinion given there. These were brought to view first at the discussion here, and are as follows :
In the case in which John Mayrant recovered his wife’s portion, namely, that of the executor of Jared Nelson, ads. J. Mayrant and wife filed the 25th of March 1791, the answer concludes by praying, that if any property should be decreed to the complainants, it should be secured for the complainant Isabella and her issue, free from the control and intermeddling of the complainant John, and not subject to his debts and incumbrances. That at the time this answer was put in, the executor of Jared Nelson stood in loco parentis to the said Isabella, who was an orphan. That afterwards on the 26th of March 1794, the court decreed to the said Isabella the legacy due her from Matthew Nelson’s estate, of whom Jared was an executor, and concluded by ordering whatever balance maybe found due Mr. Mayrant in right of Ms wife, shall be considered as settled upon said wife, in manner as shall be dmected by the court. These .were the new facts.
Again by the order of the 28th of March 1795, mentioned in my decree in the circuit court, the legacy or portion was fixed at 1S18L Os. 2d. “ to be satisfied out of the proceeds and sales of Matthew Nelson’s estate, and that the same be settled on Mrs. Isabella Mayrant and Captain.John Mayrant and their issue, under the direction of the master.”
Upon these orders no settlement was made, there being no trastee appointed to carry it into effect, until April 1808, when an application ■ as made in behalf of Mrs. Mayrant by her next friend, and it was decreed, by the *607 court, that the said John Mayrant do forthwith execute a settlement to be dated as of the 24th of March 1794, pursuant to the intent of the court, in the said decretal order: that is to say, to and for the separate use and be-nefitof the said Isabella Mayrant, during her life, and from and after her death to and for the joint and equal use and benefit of tho children of the said Isabella and John Mayrant, equally to be divided between them, and so forth: by which last decree the court passed entirely over the decretal order of 1795, as forming no part of their original intent, and as entered by mistake of the register. Thus what ought to have been done in 1794, was done in 1808, in conformity with a common maxim and the common practice of the court.
But the claim of complainant arose between the date of the second and third decretal orders, and they now contend,
First, — That there is a life estate in John Mayrant, subject to this demand of the creditor, by virtue of tho order of 1795.
Second, — That the court under the former establish* ment, had no power to decree a separate estate to tho wife, after the order of 1795, which was final.
Upon the first ground let us enquire, what was the intention of the court, by the first order of 1794 ? Mrs. Mayrant was an orphan, and the only person who stood in the place of a parent to her, had prayed that the portion she was about to receive, should be secured to her and her issue in strict settlement. This was a reasonable prayer $ for even without such a one, and whei'e, as was the case here, a husband cannot come at his wife’s portion but through the aid of this court, a settlement is> always ordered. The settlement prayed for, was a separate estate in the wife, and the court no doubt, intended to make it conformable to the prayer; for it said in the first order of 1794, whatever balance may be found due, shall be considered as settled upon tho said wife. Here the wife alone is mentioned; her rights alone are recognized ; the husband is not even named 5 and the case was directed to remain sub judicc.
*608 The intention is plain on the first order; and I do not see that it is departed from even in the second one of j although it was made no part of the case by the final decree of 1808.
That a separate estate in the wife was originally intended, is sufficiently evident: Now what reason could have induced the court in 1795 to alter this intention ? John Mayrant was largely indebted at the time the answer-was filed, and the order of 1794 was made : — in 1795, lie was still greatly in debt; and he remains • so at the present time. The prayer was made, and the order of 1794, was enacted, because he was so indebted; and to secure a portion to the ward of the court. Then where was the reason in 1795, for the court to depart from their original intention ? There was noneand before a rea - son for such departure can be shewn, it must be presumed that the coisrt acted without any at all.
< But it- is said, that agreeably to the construction of the order in 1795, and the case of Barrett and Barrett, there was no separate estate.
I grant that since the case mentioned has been decided, the construction of this order would warrant the decision, that a life estate in J. Mayrant was intended by the same; but that is not conclusive as to the intention . in this case, which arose before the doctrine was settled. The word issue is used both in the prayer and order of 1795 ; and certainty was intended to confine the settlement. ■
But it has been said, {that although the doctrine as to separate estates had not been settled before the decision in Barrett and Barrett, yet the cases existed in the books upon which that doctrine is founded.
Nothing can be more fallacious than such reasoning, to shew the general intent. Those cases, although tobe found in the books, had never been expounded and submitted to the solemn adjudication of this court; and even when that took place, the principle was not readily settled, for it was at last established by the Court of Appeals, contrary to the opinion of the Circuit Court.— Then as the case passed sub silentio in the former ecu A *609 and might have been left very much to the wording of the register, such a mistake of such an abstruse doctrine, and contrary to the real intent, might very well have crept into the minutes of the proceedings. For these reasons, I think that the former court intended a strict settlement originally, and never departed virtually there-. from.
I come now to the second ground : Had the court the power after the order of 1795, and by their order of 1808, when the rights of creditors had intervened, to decree a separate estate in Mrs, Mayrant ?
No one can deny to that court the power to rehear, review, and to correct their proceedings. And they often exercised these powers, not only while suits were pending, hut also after decrees, purporting to be final, were delivered. But in the present case, there was not even a final decree, under the order of 1795; for it remained for the master to report a settlement, which the court might have altered or modified.
But the meritorious rights of creditors are objected ?
I answer that the rights of the wife, who brought a portion to her husband, were more meritorious, and are under certain forms preferred by law. The general doctrine is, that marriage is a valuable consideration, when the wife brings with her a portion. — Roberts on Fraud. Cont. 105. And according to the authorities cited by defendant’s counsel, settlements after marriage have been decided to bo good against general creditors; although founded only upon a parol promise before marriage. Even a promise of this kind, made by an infant before marriage, to settle the estate when of age, was held a sufficient consideration to support the settlement after marriage, made in pursuance of such promise, although the infant was not compellable by law to fulfil the same. The reasons upon which these decisions are founded, is that the wife’s portion was the subject of the settlement, which is deemed a valuable consideration — Roberts on Fraud. Cont. 241, 2, 3, and 4.
Upon this subject the court looks much to the purity of intention of the donor, and tiiat the thing agreed to be *610 done, and the thing performed,'should exhibit so plain a correspondence, as to unite them in a derivation from the g£une original motive. Now there was marriage and a portion here, which when united appear to form a double consideration, of a higher nature than that of creditors:’ besides, the court in this case, stood in theplacc of donor, and I suppose the purity of its motive will hardly be called in question.
But further, it has been said, that this creditor upon a search made, ought to have found sufficient notice upon the decretal order of 1795, to shew him that there was a separate estate.
" It is evident that when ho gave the credit he never had sought for the order, and never thought of a trust estate, or a life estate in John Mayrant, until he filed his bill; for the whole of the charges in his account are made against John Mayrant. But .supposing him to have looked into the order, and even to have employed counsel, still for the reasons I have before stated, the point would ■ remain very doubtful ■: he would sec that by giving the credit he might risk a law suit, and perhaps eventually lose his money. Then, by giving the credit he did a very imprudent act, and ought not to he favored here.
It.lias also been said, that the articles furnished were, of such a nature, that they ffiust have been for the the trust estate. This was not made certain, or at least not more so, than in the case of Ewing and Smith. At the time John Mayrant had hired negroes, and worked a "certain number of his own slaves, upon a separate plantation ; about$4,@00 of the account had been paid, and a small balance of g483 only remained unpaid; but ■a small part of the articles comparatively, were for plantation use; and the payment made would more than cover them all.
But it has been further urged, that John Mayrant was the agent for the trust estate. Now, this ought to have been proved; — there was no testimony but that of Qil^ert Dinkins to prove it j and tire answers of both the trustee and cestui que trust deny the charge. Yet after all it is evident- that the Court of Equity, under the for- *611 nicr establishment, which settled this whole matter by the decretal order of 1808, was vested with as ample powers as the present court. According to law, its records ought to be conclusive evidence. The determination of a court of competent jurisdiction, whether of record or not of redord, is also conclusive. In Ncw-York the supremo court will not open a judgment, so as to allow money to be recovered, which was paid under a decision of a competent court, although the plaintiff had paid the money before, and could not find the receipt at the time before, but afterwards discovered it. — 2 Espin.~ 436, New-York edition. Now this was in fact to determine, that they could not look into the merits of the judgment; and neither ought this court, except to review, or upon a charge of its being obtained by fraud. But further, this court has determined that they would not even entertain a bill to review the decisions of the former court — See the case of Lindsey vs. Hampton. They said the decisions of the former court stood upon sacred ground. Then if the ground which the decree of 1808 has covered, be indeed sacred, it may be assimilated to a field well enclosed on all sides, into which this court cannot penetrate unless by a forcible entry.
Silliman and Blaading for Complainant. — Miller • for defendants.
W. D. James.